[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15927
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cv-61322-WPD


GEOVANY QUIROZ,

Plaintiff-Appellant,

versus


MSC MEDITERRANEAN SHIPPING COMPANY S.A.,
MSC CRUISES (USA), INC.,
MSC CROCIERE S.A.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 24, 2013)

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Geovany Quiroz appeals an order compelling him to arbitrate his complaints against MSC Mediterranean Shipping Company S.A., MSC Cruises (USA), Inc., and MSC Crociere S.A. (collectively "MSC") for negligence, under the Jones Act, and for unseaworthiness, maintenance and cure, and failure to treat, under maritime law. The district court granted the motion of MSC to compel Quiroz to arbitrate his claims, under the United Nations Convention on the Recognition and Enforcement of Arbitral Awards, based on a provision in his collective bargaining agreement that "any and all claims . . . against MSC, . . . shall be arbitrated in accordance with the terms and conditions in this Agreement." See 9 U.S.C. § 203. After Quiroz appealed, we directed the parties to address three issues we raised sua sponte about the jurisdiction of the district court and this Court. We conclude that the district court had jurisdiction over Quiroz's complaint and that we have jurisdiction to review the order compelling him to arbitrate. Because the order to compel arbitration is required by our precedents in Lindo v. NCL (Bahamas) Ltd., 652 F.3d 1257 (11th Cir. 2011), and Bautista v. Star Cruises, 396 F.3d 1289 (11th Cir. 2005), we affirm.

## I. BACKGROUND

Quiroz complained that MSC was responsible for injuries that Quiroz suffered on December 4, 2010, while he was serving in navigable waters as "First Pastryman" aboard the MSC POESIA. Quiroz alleged that he suffered a "dual

2

radius and ulna fracture" when his right arm was caught in a cake mixer paddle.

Quiroz complained about the negligence of MSC for, among other things, failing

to provide a safe working environment and adequate instruction and supervision.

Quiroz also complained that the POESIA had been unseaworthy and that MSC had

violated its duties to provide maintenance and cure and to treat Quiroz "with

prompt, proper, adequate and complete medical care." Quiroz sought monetary

damages for his injuries, and a "jury trial of all issues so triable."

Quiroz invoked jurisdiction based on diversity of citizenship or,

alternatively, maritime law. With respect to diversity, Quiroz alleged only that

"[t]he matter in controversy exceeds, exclusive of interest and costs, the sum

specified by 28 U.S.C. [§] 1332." In the alternative, Quiroz alleged that the

"matter f[ell] under the admiralty and maritime jurisdiction of [the] Court."

MSC filed a motion to compel Quiroz to arbitrate his complaint and

requested, in its prayer for relief, that the district court "enter an Order dismissing

the instant action and compelling [Quiroz] to proceed to arbitration." MSC argued

that Quiroz had entered an employment agreement that provided he would arbitrate

all claims against MSC, that agreement was enforceable under our decision in

Bautista, 396 F.3d at 1294–1301, and any defenses he might raise "to arbitration

[could] not be considered in response to . . . [the] motion to compel arbitration,"

under Bautista, id. at 1302–03, and Lindo, 652 F.3d at 1257. MSC attached to its

3

motion a copy of Quiroz's employment contract in which he accepted the rank of

"First Pastry" on the POESIA "according to the terms, and conditions, stated in the

Collective Agreement."  Quiroz's contract also provided that, "[h]aving read the

rules of the above mentioned Collective Agreement which to any extent, are

literally referred to in the present act, and having also explained it, the parties have

fully agreed and accepted to underwriting it."  Article 31 of the Collective

Agreement contained an arbitration clause providing for arbitration of "any and

all" claims against MSC under Panamian law:

> Grievances and disputes which remain unresolved after a sixty (60) day period, must be referred to arbitration to the exclusion of any other legal or court proceeding as set forth in this Agreement.  It is further agreed that any and all claims from a Seafarer against the Company, . . . including Jones Act claims, claims for damages for personal injury, . . . negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure whether based in tort or contract or under the laws of any nation or jurisdiction shall be arbitrated in accordance with the terms and conditions in this Agreement. . . . The arbitration referred to in this Article is exclusive and mandatory.

> . . . [A]ny grievance or dispute, with the exception of a wage dispute which is governed by the MSC Wage Grievance Policy and Procedure (including mandatory arbitration procedures found therein) shall be referred to and finally resolved by arbitration under the American Arbitration Association/International Centre for Dispute Resolution International Rules, which Rules are deemed to be incorporated by reference into this clause. . . . The law of the vessel's flag state[, Panama,] shall govern any such dispute.  Each party shall bear its own attorney's fees, but MSC shall pay for the costs of arbitration as assessed by the AAA.

Quiroz opposed the motion to compel and dismiss and argued that the arbitration clause was invalid and unenforceable.  Quiroz challenged the formation of the contract to arbitrate on the grounds that it violated the Seaman's Articles of Agreement Convention, the Maritime Labor Convention, and Panamian law by denying him the opportunity "to examine and review the terms and conditions of the arbitration provisions and . . . to seek counsel to advise him with respect to [those] terms and conditions."  In the alternative, Quiroz argued that the arbitration clause was unenforceable because he would be "completely deprived of his remedies" under the Jones Act and general maritime law if he was forced to arbitrate under Panamian law; the arbitration clause sought to defeat the remedial purposes of the "Jones Act and the general maritime law," under Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054 (11th Cir. 1998); and the arbitration clause was void as against public policy, as addressed in Thomas v. Carnival Corp., 573 F.3d 1113 (11th Cir. 2009).

The district court granted the motion of MSC to compel and dismiss, denied as moot all pending motions, and directed the clerk to close the case.  The district court ruled that, under Bautista, it had to compel arbitration because the arbitration clause satisfied the four requirements for it to fall under the Convention.  396 F.3d at 1294–95 & n.7.  The district court also ruled that Quiroz's affirmative defenses were "not viable at the arbitration enforcement stage" and "must be asserted during

the arbitral award enforcement stage" of the action, under <u>Lindo</u>, 652 F.3d at 1280–82.

After Quiroz appealed, we directed the parties to address three jurisdictional issues: (1) whether the district court entered a "final decision with respect to an arbitration," 9 U.S.C. § 16(a)(3), that was appealable; (2) "whether the complaint sufficiently alleged . . . that it was based on diversity of citizenship"; and, (3) if the complaint failed to allege diversity of citizenship, "whether an amendment in this Court, or the district court, [was] appropriate."  With regard to our jurisdiction, MSC argued that the order compelling arbitration was not final because the district court failed to dismiss Quiroz's complaint and instead administratively closed the case.  Quiroz argued that the order was final because "the district court closed the case (without entering a stay), leaving the court with nothing to do but execute the judgment."  As to the jurisdiction of the district court, MSC argued that Quiroz failed to allege facts sufficient to invoke diversity jurisdiction, but a remand was unnecessary because the district court could have exercised federal question jurisdiction under the Convention or admiralty jurisdiction.  Quiroz argued that his complaint had "sufficiently invoked the district court's . . . <u>admiralty</u> jurisdiction" and, in the alternative, he could cure any jurisdictional defects on appeal.

## II. STANDARD OF REVIEW

We apply a single standard of review to resolve the issues in this appeal. We review de novo issues of "[w]hether we have jurisdiction," San Francisco Residence Club, Inc. v. 7027 Old Madison Pike, LLC, 583 F.3d 750, 754 (11th Cir. 2009), and "[w]hether [the district] court [had] subject-matter jurisdiction to hear a matter," Holston Invs., Inc. B.V.I. v. LanLogistics Corp., 677 F.3d 1068, 1070 (11th Cir. 2012). We also review de novo an order to compel arbitration. Lindo, 652 F.3d at 1275 n.15.

## III. DISCUSSION

We divide our discussion into three parts. First, we address whether the district court had subject matter jurisdiction over Quiroz's complaint. Second, we address whether the district court entered a "final decision with respect to an arbitration," 9 U.S.C. § 16(a)(3), that we have jurisdiction to review. Third, we address whether the district court was required to compel Quiroz to arbitrate his complaints against MSC.

### A. Quiroz's Complaint Failed to Allege Sufficient Facts to Invoke Jurisdiction Based on Diversity, But He Pleaded Facts that Invoked Jurisdiction in Admiralty.

Quiroz's complaint alleged jurisdiction based on both diversity of citizenship and admiralty, but failed to plead sufficient facts to invoke the diversity jurisdiction of the district court. To establish diversity jurisdiction, the complaint must allege that the action is between "citizens of a State and citizens or subjects of

7

a foreign state." 28 U.S.C. § 1332(a)(2). Because Quiroz's complaint failed to allege his citizenship or the citizenship of MSC, the district court lacked jurisdiction based on diversity of the parties. See Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ., 663 F.3d 1304, 1305 (11th Cir. 2011).

Congress vested district courts with original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). From its inception, jurisdiction in admiralty has recognized a right of action for seamen who are injured in the service of their ship while in navigable waters. See O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 40, 63 S. Ct. 488, 490–91 (1943). "It allowed such recovery if the injury resulted from unseaworthiness of the vessel or her tackle, and permitted recovery of maintenance and cure, ordinarily measured by wages and the cost of reasonable medical care, if the seaman was injured or disabled in the course of his employment." Id. at 40, 63 S. Ct. at 491. To invoke jurisdiction in admiralty, Quiroz had to allege facts establishing "the nature of [his] service as a seaman[]. . ., his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters." Swanson v. Marra Bros., 328 U.S. 1, 4, 66 S. Ct. 869, 871 (1946) (internal citations omitted).

Quiroz pleaded sufficient facts to invoke the admiralty jurisdiction of the district court. Quiroz alleged that MSC "owned, operated, managed, maintained and/or controlled the vessel M/S POESIA," his "employer was an agent of" MSC,

8

and he was injured "while employed in the capacity of First Pastryman on board the M/S POESIA," which established his relationship with MSC and its vessel. Quiroz also alleged that the "vessel was in navigable waters" at the time of his injury and that he "debarked in Port Everglades, Florida," to obtain further treatment.

### B. We Have Jurisdiction to Review the Order Compelling Quiroz to Arbitrate.

The Federal Arbitration Act provides that a party may appeal "a final decision with respect to an arbitration," 9 U.S.C. § 16(a)(3), but "an appeal may not be taken from an interlocutory order . . . compelling arbitration," id. § 16(b)(3). These provisions respect the authority of the district court to retain jurisdiction to superintend the arbitration process, see Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc., 312 F.3d 1349, 1354–55 (11th Cir. 2002), or, alternatively, to "end[] the litigation on its merits and leave[] nothing more for the court to do but execute the judgment" following arbitration, Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 86, 121 S. Ct. 513, 520 (2000) (internal quotation marks and citation omitted).

The district court entered a "final decision with respect to an arbitration" of Quiroz's complaint. 9 U.S.C. § 16(a)(3). To be final, the decision of the district court had to "dispose[] of the entire case on the merits and le[ave] no part of it pending before the court." Green Tree, 531 U.S. at 86, 121 S. Ct. at 520. The

9

district court granted the motion of MSC to dismiss Quiroz's complaint and

compel arbitration. When the district court granted the motion of MSC, dismissed

as moot all other motions pending, and directed the clerk to close Quiroz's case, "it

disposed of all the issues framed by the litigation and left nothing for the district

court to do but execute the judgment." Batista, 396 F.3d at 1294 (internal

alterations and quotation marks omitted) (citing Emp'rs Ins. of Wausau v. Bright

Metal Specialties, Inc., 251 F.3d 1316, 1321 (11th Cir. 2001)).

   MSC argues that the district court ordered an administrative closure instead

of entering a final order, but we disagree. Our precedents establish that a district

court administratively closes a case when it retains jurisdiction to perform specific

acts and then closes the case instead of dismissing it. Brandon, Jones, 312 F.3d at

1354–55; see also Fla. Assoc. for Retarded Citizens, Inc. v. Bush, 246 F.3d 1296,

1298 (11th Cir. 2001) (retaining jurisdiction to issue orders to execute and enforce

compliance with a consent decree). In Brandon, we observed that, had the district

court disposed of the complaint and "closed" the case, "that conduct would [have]

le[d] us to conclude that the order was final." 312 F.3d at 1354. Because the

district court also granted the plaintiff's request "to retain jurisdiction to confirm

the arbitration award and to award attorney's fees associated with the litigation and

the arbitration," the order was not final because the "retained jurisdiction

contemplate[d] that more [was] yet to come in [the] litigation." Id. at 1355. The

10

order compelling Quiroz to arbitrate is final because it does not contemplate further proceedings.

### C. The District Court Did Not Err By Ordering Quiroz to Arbitrate His Complaint Against MSC.

District courts have a duty to enforce an agreement to arbitrate that falls under the United Nations Convention on the Recognition and Enforcement of Arbitral Awards.  The Convention provides that a contracting state "shall recognize an agreement in writing under which the parties undertake to submit to arbitration . . . [their] differences," Convention, Art. II(1), and "shall refer the parties to arbitration" unless the agreement is invalid, id., Art. II(3).  After the United States ratified the treaty, Congress enacted legislation, referred to as the Convention Act, that recognizes that a district court exercises "original jurisdiction over . . . an action or proceeding" that "fall[s] under the Convention" because it is "deemed to arise under the laws and treaties of the United States."  9 U.S.C. § 203. The Convention Act, like the Convention, encourages district courts to enforce commercial arbitration agreements.  Id. § 206; see Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15, 94 S. Ct. 2449, 2457 n.15 (1974).

Under the Convention Act, the district court must address a "very limited inquiry" in determining whether to enforce an agreement to arbitrate.  Bautista, 396 F.3d at 1294 (quoting Francisco v. STOLT ACHIEVEMENT MT, 293 F.3d 270, 273 (5th Cir. 2002)).  When a dispute arises about an agreement to arbitrate,

the agreement is governed by the Convention if the following four factors are

present:

> (1) there is an agreement in writing within the meaning of the
> Convention; (2) the agreement provides for arbitration in the territory
> of a signatory of the Convention; (3) the agreement arises out of a
> legal relationship, whether contractual or not, which is considered
> commercial; and (4) a party to the agreement is not an American
> citizen, or that the commercial relationship has some reasonable
> relation with one or more foreign states.

Id. at 1294 n.7.  If the agreement satisfies those four jurisdictional factors, the

district court must order arbitration unless the agreement "is null and void,

inoperative or incapable of being performed."  Convention, Art. II(3).  We

consider challenges to enforcement "mindful that the Convention Act generally

establishes a strong presumption in favor of arbitration of international commercial

disputes."  Bautista, 396 F.3d at 1295 (internal quotation marks and citation

omitted).

Quiroz argues that his agreement to arbitrate fails to satisfy the first

jurisdictional factor, that there be an agreement in writing, but we disagree.  Parties

have an "agreement in writing" under the Convention if there is "an arbitral clause

in a contract or an arbitration agreement, signed by the parties or contained in an

exchange of letters or telegrams."  Convention, Art. II(2).  Quiroz does not

challenge the finding of the district court that he entered an agreement in writing.

Instead, Quiroz seeks to superimpose an additional requirement that the agreement

be "validly formed" in compliance with the Seaman's Convention, the Maritime Labor Convention, and Panamanian law. But under the limited jurisdictional inquiry prescribed by the Convention Act, the district court had only to confirm that there was an agreement in writing in compliance with the Convention. See Bautista, 396 F.3d at 1301.

Quiroz also argues that his agreement was not valid under the Conventions and Panamanian law because he was denied an opportunity to review and consult with counsel before entering the agreement, but this contention is essentially the same argument about "knowledgeable consent" that we rejected in Bautista. The crewmembers in Bautista argued that their agreement to arbitrate was unenforceable unless their employer could prove they had been "specifically notified of the arbitration provision," but we held that neither the Convention nor the Convention Act required proof of "notice or knowledgeable consent" and the imposition of "such an evidentiary showing . . . would be squarely at odds with a court's limited jurisdictional inquiry" under the Convention. Id. at 1301. Although Quiroz argues that he did not "freely enter" the agreement to arbitrate or "understand his rights and responsibilities," he declared in his employment contract that he had "read the rule[] . . . [about arbitration in] the . . . Collective Agreement, . . .[had] also explained it, . . .[and] fully agreed and accepted to underwriting it."

13

Quiroz also argues that the arbitration clause is "null and void" because its application of Panamanian law effectively deprives him of a remedy under the Jones Act and general maritime law, but his argument is foreclosed by our precedent. In Lindo, we recognized that the "null and void" clause in the Convention limits the defenses available to enforcement of a seaman's arbitration agreement to "those limited situations, such as 'fraud, mistake, duress, and waiver,' constituting 'standard breach-of-contract defenses' that 'can be applied neutrally on an international scale.'" 652 F.3d at 1276 (quoting Bautista, 396 F.3d at 1302). Quiroz's public policy defense "by definition cannot be applied neutrally on an international scale." Id. at 1278 (internal quotation marks omitted). Quiroz contends that a public policy argument constitutes a valid defense to enforcement of an arbitration clause under Thomas v. Carnival Corp., 573 F.3d 1113, but we held in Lindo that "to the extent Thomas allowed the plaintiff seaman to prevail on a new public policy defense under Article II, Thomas violate[d] Bautista and our prior panel precedent rule." Lindo, 652 F.3d at 1278.

Quiroz also contends that the enforcement of the arbitration clause would effectively deny him meaningful relief and contravene our decision in Paladino v. Avnet Computer Techologies, 134 F.3d 1054, but we disagree. Paladino involved enforcement of an agreement to arbitrate under the Federal Arbitration Act instead of the Convention and declared unenforceable an agreement mandating arbitration

14

of federal statutory claims for which the employee could not recover damages.  Id. at 1060–62.  In contrast with Paladino, Quiroz's agreement is enforceable under the Convention and does not limit the authority of the arbitrator to grant Quiroz meaningful relief.  If the application of Panamanian law deprives Quiroz of a remedy, he can raise his defense about public policy in an action to enforce the arbitral award.  See Lindo, 652 F.3d at 1263.

## IV. CONCLUSION

We **AFFIRM** the order compelling Quiroz to arbitrate his complaint against MSC.